IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMBER PANKONIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SOUTHEAST COMMUNITY COLLEGE AREA,<br><br>　　　　Defendants. | CASE NO. **8:24-cv-___**<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW, Plaintiff Amber Pankonin, by and through her undersigned counsel, and for her Complaint against Defendant, states and alleges as follows:

INTRODUCTION

1. This is an action seeking redress for the violation of the rights guaranteed Plaintiff Amber Pankonin by the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101 *et seq.*; Title VII of the Civil Rights; 42 U.S.C. §§ 1981 and 1983; the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; Section 5 of the Bill of Rights of the Constitution of the State of Nebraska; the Pregnant Workers Fairness Act; and the Americans with Disabilities Act .

PARTIES

2. Plaintiff Amber Pankonin ("Ms. Pankonin") is an individual residing in Lincoln, Lancaster County, Nebraska.

3. Pursuant to Neb. Rev. Stat. § 85-1504 and -1505, Defendant Southeast Community College Area ("SCC") is a body corporate and may be sued as such. SCC operates campuses located in Lincoln, Beatrice, and Milford, Nebraska.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper in this Court pursuant to 28, U.S.C. § 1391, as SCC is located within the District of Nebraska and a substantial part of the events or omissions giving rise to the claims occurred in the District of Nebraska.

## FACTUAL BACKGROUND

6. Ms. Pankonin began employment with SCC in January 2021 as a Nutrition Instructor in the Culinary/Hospitality program.

7. As of the date of this filing, Ms. Pankonin remains employed as a Nutrition Instructor with SCC.

8. Throughout Ms. Pankonin's employment with SCC, her supervisory chain of command included: Program Chair (or Co-Chairs), Assistant Dean, Dean of Business of Community Services Division, and Vice President of Instruction.

9. As early as March 2022, Ms. Pankonin was discriminated and retaliated against, including but not limited to the following:

   a. The then-Program Chair, Rob Epps, reprimanded Ms. Pankonin (but not her male colleagues) for not spending lunch breaks with other female co-workers. Ms. Pankonin pointed out that male colleagues also did not spend lunch breaks with the group.

   b. Shortly thereafter, Mr. Epps retaliated by correcting Ms. Pankonin's student(s) during the Assistant Dean's observation of Ms. Pankonin's classes.

   c. Shortly thereafter, Mr. Epps also reported to the Assistant Dean, for inclusion in Ms. Pankonin's performance appraisal, that she was "not inclusive." However, the item was removed after Ms. Pankonin explained the situation to the Assistant Dean.

10. During the summer of 2022, the then-Assistant Dean departed SCC suddenly. Upon

information and belief, she raised concerns and allegations of discrimination and retaliation against SCC.

11. In approximately August 2022, Mr. Epps abruptly appointed Vicki Rethmeier as Program Co-Chair.

12. Ms. Rethmeier's promotion to Program Co-Chair was not preceded by any public announcement of the vacancy or, upon information and belief, any appropriate application or interview process.

13. At the time of her promotion to Program Co-Chair, Ms. Rethmeier was less qualified than Ms. Pankonin.

14. Mr. Epps resigned shortly after appointing Ms. Rethmeier as Program Co-Chair.

15. After Mr. Epps' resignation, Ms. Rethmeier appointed Abby Hoch as Program Co-Chair.

16. Ms. Hoch's promotion to Program Co-Chair was not preceded by any public announcement of the vacancy or, upon information and belief, any appropriate application or interview process.

17. At the time of her promotion to Program Co-Chair, Ms. Hoch was less qualified than Ms. Pankonin.

18. In approximately November 2022, Ms. Pankonin was again discriminated and retaliated against, including but not limited to the following:

   a. Ms. Rethmeier reprimanded Ms. Pankonin for using SCC facilities to film live local TV spots to promote both SCC and Ms. Pankonin's other business ventures.

   b. Ms. Rethmeier did not reprimand Brandon Harpster, another SCC instructor who also appeared in the live local TV spots that day.

   c. Ms. Rethmeier stated or implied that Ms. Pankonin needed to pay for the use of SCC

facilities.

    d. Ms. Pankonin inquired about the amount or rate to be paid, and stated that payment should also be required of others (including male colleagues, such as Brandon Harpster and Travis Green) who used SCC facilities for other purposes, such as catering.

    e. Although the reprimand was repeated on more than one occasion, Ms. Pankonin was never provided any amount or rate to pay.

    f. Thereafter, Ms. Pankonin discontinued using SCC facilities for live local TV spots or any other purposes.

    g. Upon information and belief, other SCC employees (including male colleagues) continued to use SCC facilities for other purposes, including through the date of this filing.

19. In approximately December 2022 and January 2023, Ms. Pankonin met several times with a coworker (Kimberly Williams-Lamb, Hospitality Instructor) to discuss and plan an SCC-sponsored student trip to France. Throughout these conversations, Ms. Williams-Lamb:

    a. repeatedly brought up sexual topics,

    b. talked about her marriage and extramarital relationships, including an extramarital relationship with another SCC faculty member, Brandon Harpster, and

    c. propositioned Ms. Pankonin.

20. In approximately February 2023, sexual harassment of Ms. Pankonin by Ms. Williams-Lamb and Mr. Harpster escalated. Among other issues, the two of them made comments about a "threesome" and calling Ms. Pankonin "Hot Amber."

21. In addition, in approximately February 2023, Ms. Williams-Lamb:

    a. attempted to hold Ms. Pankonin's hand,

    b. forcefully hugged Ms. Pankonin and sexually assaulted Ms. Pankonin by

       inappropriately touching her on her breast,

   c. stated that her friends call her "rapey,"

   d. gave Ms. Pankonin an unsolicited and unwanted Valentine's Day gift of jewelry,

   e. talked about her extramarital attraction to and relationships with other women, and

   f. told Ms. Pankonin details about her extramarital affair with Mr. Harpster.

22. In addition, in approximately February 2023, Mr. Harpster told Ms. Pankonin that he was getting a divorce and his wife had accused him of having an affair with Ms. Pankonin.

23. Ms. Pankonin reported the sexual harassment and incidents described herein to SCC on numerous occasions, including but not limited to the following:

   a. to Program Co-Chair Abby Hoch on or about March 30, 2023,

   b. to Dean of Business and Community Services Division Kathy Eitzmann and Program Co-Chairs Vicki Rethmeier and Abby Hoch on or about April 5, 2023,

   c. to Global Education Coordinator Nicole Flores on or about April 21, 2023,

   d. to Vice President of Instruction Dr. Joel Michaelis on or about April 28, 2023,

   e. to Dean of Business and Community Services Division Kathy Eitzmann on or about May 1, 2023,

   f. to Dean of Business and Community Services Division Kathy Eitzmann and Vice President of Instruction Dr. Joel Michaelis on or about June 1, 2023, and

   g. finally, to Administrative Director of Title IX and Institutional Compliance ("SCC Title IX Officer") Robert Sanford on or about June 1, 2023.

24. On or about April 6, 2023, a Purchaser at SCC who had a prior romantic or sexual relationship with Ms. Williams-Lamb (Katie Skinner) sent Ms. Pankonin a harassing text message.

25. Throughout this period, Ms. Pankonin was required to work with Ms. Williams-

Lamb and Mr. Harpster on projects including a Valentine's holiday bake sale and planning a SCC-sponsored student trip to France.

26. In approximately mid-April 2023, Ms. Pankonin receives a positive and favorable performance appraisal.

27. At all relevant times, Ms. Pankonin's job performance was satisfactory.

28. During Ms. Pankonin's meeting with Dr. Michaelis on or about April 28, 2023, Dr. Michaelis stated that he would submit her report(s) to Mr. Sanford in his capacity as the SCC Title IX Officer.

29. On or about April 28, 2023, the same day she met with Dr. Michaelis, Ms. Pankonin received an email from Ms. Eitzmann to schedule a meeting for the following Monday.

30. During Ms. Pankonin's meeting with Ms. Eitzmann on or about May 1, 2023, Ms. Eitzmann asked Ms. Pankonin to sign a document stating that she would be on "her best behavior during the upcoming SCC-sponsored student trip to France.

31. During Ms. Pankonin's meeting with Ms. Eitzmann on or about May 1, 2023, Ms. Eitzmann also reprimanded Ms. Pankonin for a purported "complaint" about Ms. Pankonin getting "excited" during a meeting that occurred approximately nine (9) months prior.

32. During Ms. Pankonin's meeting with Dr. Michaelis and Ms. Eitzmann on or about June 1, 2023, Ms. Pankonin learned that her report(s) had never been submitted to Mr. Sanford in his capacity as the SCC Title IX Officer.

33. During Ms. Pankonin's meeting with Dr. Michaelis and Ms. Eitzmann on or about June 1, 2023, Dr. Michaelis reprimanded Ms. Pankonin for not submitting a "Tips Report." However, both Abby Hoch and Robert Sanford had assured Ms. Pankonin at other times that a "Tips Report" was not required.

34. During Ms. Pankonin's meeting with Dr. Michaelis and Ms. Eitzmann on or about June 1, 2023, Ms. Pankonin was finally invited to meet with Mr. Sanford in his capacity as the SCC Title IX Officer.

35. During Ms. Pankonin's meeting with Mr. Sanford on or about June 1, 2023, Mr. Sanford stated that had no knowledge of her report(s). Rather, the only thing Mr. Sanford had heard about Ms. Pankonin was that she had been the subject of a complaint by Ms. Skinner (upon information and belief, at approximately the same time Ms. Skinner sent Ms. Pankonin the harassing text message), and that the complaint had been determined to be harassment against Ms. Pankonin and closed.

36. In approximately July 2023, Ms. Rethmeier harassed Ms. Pankonin by suggesting Ms. Pankonin could play the piano rather than teach less physically demanding courses during her pregnancy and after childbirth.

37. In mid-August 2023, Ms. Pankonin was hospitalized with pregnancy-related hypertension, and was advised to lower her activity level and stress through the end of her pregnancy (which was, at that time, anticipated to be in October).

38. Prior to August 2023, SCC had provided scheduling accommodations to other instructors based on their pregnancy status, childbirth, and/or related medical conditions, as well as status and obligations as mothers.

39. Ms. Pankonin requested reasonable scheduling accommodations, including as follows:

   a. In approximately late August 2023, Ms. Pankonin met with the new Associate Dean Dan Gross to discuss maternity leave and requested not to teach any night classes during the spring 2024 semester.

    b. In approximately September 2023, Ms. Pankonin inquired about her schedule with Ms. Rethmeier, who provided to no answers, but responded that it was "above my pay grade."

    c. In approximately September 2023, Ms. Pankonin met with Mr. Gross and again requested not to teach any night classes during the spring 2024 semester. Mr. Gross stated that it "shouldn't be a problem."

    d. In approximately late October 2023, the class schedule for the spring 2024 semester was posted, showing Ms. Pankonin teaching two (2) out of a total three (3) night classes offered in the Culinary/Hospitality program.

    e. On or about November 5, 2023, Ms. Pankonin inquired with Mr. Gross about the schedule and their prior conversations. Mr. Gross responded that he would "look into it."

40. At all relevant times, SCC had procedures in place related to reporting, handling, and resolving sexual harassment claims and issues related to Title IX (collectively, "SCC Procedures").

41. At all relevant times, SCC Procedures were published and available to all SCC employees and personnel, including but not limited to all individuals named in this Complaint.

42. At all relevant times, SCC failed to train its employees and personnel in the SCC Procedures.

43. At all relevant times, Ms. Pankonin followed SCC Procedures.

44. SCC did not follow its own SCC Procedures.

45. Rather, SCC repeated ignored Ms. Pankonin's reports, complaints, and efforts to follow SCC Procedures, and instead retaliated against her.

46. Male employees; employees who were not experiencing pregnancy, childbirth, and/or related medical conditions; and/or employees who have not engaged in a protected activity have been treated in a more favorable manner than Ms. Pankonin.

47. Other acts of discrimination and retaliation have occurred but are not specifically set forth herein. The discrimination and retaliation has continued through the date of the filing of this Complaint.

48. The discriminatory and/or retaliatory conduct has been sufficiently patterned and/or pervasive to create a racially and/or retaliatory hostile working environment. The discriminatory and/or retaliatory conduct has continued through the date of the filing of this Complaint.

49. All of the illegal activities described herein occurred while SCC's supervisors and/or management-level employees were acting in the scope and course of their employment with SCC.

50. For claims arising under 42 U.S.C. § 1983, the unlawful conduct constitutes violations resulting from official policy, practice, unofficial custom, or with deliberate indifference, such as in failing to train or supervise SCC employees.

COUNT I

51. Ms. Pankonin incorporates all allegations in this Complaint as if set forth herein.

52. Ms. Pankonin's gender/sex was a motivating factor in the adverse employment actions described herein. Said conduct is violative of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 1981 and 1983, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. As set forth herein, the constitutional violations arising under § 1983 resulted from SCC's policy, practice, unofficial custom, or deliberately indifferent failure to train or supervise.

53. As a result of SCC's illegal actions, Plaintiff has sustained compensatory damages, lost wages and the value of benefits and will continue to incur lost wages and job-related benefits into the future.

## COUNT II

54. Ms. Pankonin incorporates all allegations in this Complaint as if set forth herein.

55. Because of Ms. Pankonin's gender/sex, she was subjected to a hostile working environment. Said conduct is violative of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 1981 and 1983, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. As set forth herein, the constitutional violations arising under § 1983 resulted from SCC's policy, practice, unofficial custom, or deliberately indifferent failure to train or supervise.

56. As a result of the SCC's illegal actions, Plaintiff has sustained compensatory damages, lost wages and the value of benefits and will continue to incur lost wages and job-related benefits into the future.

## COUNT III

57. Ms. Pankonin incorporates all allegations in this Complaint as if set forth herein.

58. Ms. Pankonin's pregnancy, childbirth, and/or related medical conditions, was a motivating factor in the adverse employment actions described herein. Said conduct is violative of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act, as amended, the Pregnant Workers Fairness Act, and the Americans with Disabilities Act.

59. As a result of SCC's illegal actions, Plaintiff has sustained compensatory damages, lost wages and the value of benefits and will continue to incur lost wages and job-related benefits into the future.

COUNT IV

60. Ms. Pankonin incorporates all allegations in this Complaint as if set forth herein.

61. Because Ms. Pankonin at various relevant times was pregnant, had given birth, or had related medical conditions, she was subjected to a hostile working environment. Said conduct is violative of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act, as amended, the Pregnant Workers Fairness Act, and the Americans with Disabilities Act.

62. As a result of the SCC's illegal actions, Plaintiff has sustained compensatory damages, lost wages and the value of benefits and will continue to incur lost wages and job-related benefits into the future.

COUNT V

63. Ms. Pankonin incorporates all allegations in this Complaint as if set forth herein.

64. After Plaintiff engaged in one or more protected activities such as speaking out on matters of public concern and/or opposing actions allegedly made illegal under the laws and constitutions of the State of Nebraska and the United States of America, Plaintiff was retaliated against in her terms, conditions and privileges of employment. Said conduct is violative of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Acts, as amended, 42 U.S.C. §§ 1981 and 1983, The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the First Amendment of the United States Constitution and §5 of the Bill of Rights of the Constitution of the State of Nebraska. As set forth herein, the constitutional violations arising under § 1983 resulted from SCC's policy, practice, unofficial custom or deliberately indifferent failure to train or supervise.

65. As a result of the SCC's illegal actions, Plaintiff has sustained compensatory damages, lost wages and the value of benefits and will continue to incur lost wages and job-related

benefits into the future.

## COUNT VI

66.　Ms. Pankonin incorporates all allegations in this Complaint as if set forth herein.

67.　Ms. Pankonin was subjected to a retaliatory hostile working environment after she engaged in one or more protected activities as referenced herein. Said conduct is violative of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Acts, as amended, 42 U.S.C. §§ 1981 and 1983, The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the First Amendment of the United States Constitution and §5 of the Bill of Rights of the Constitution of the State of Nebraska. As set forth herein, the constitutional violations arising under § 1983 resulted from SCC's policy, practice, unofficial custom or deliberately indifferent failure to train or supervise.

68.　As a result of the SCC's illegal actions, Plaintiff has sustained compensatory damages, lost wages and the value of benefits and will continue to incur lost wages and job related benefits into the future.

WHEREFORE, Plaintiff Amber Pankonin respectfully requests that this Court assume jurisdiction as to the counts alleged herein and grant the following relief:

A.　Declare the conduct of Defendant SCC to be violative of the rights of the Plaintiff under the appropriate laws;

B.　Direct Defendant to instate the Plaintiff to positions she was prevented from seeking for which she was qualified, to award all back wages and the value of benefits, including interest thereon, or to find that instatement is not appropriate and award Plaintiff lost wages and the value of benefits already incurred and award her front pay and the value of future lost benefits as allowed under law;

C.  Award Plaintiff compensatory damages, including for pain, suffering, embarrassment, inconvenience, and humiliation as allowed by law;

D.  Enter an order prohibiting Defendant from discriminating and/or retaliating against Plaintiff now and in the future;

E.  Award Plaintiff attorney's fees and costs; and

F.  Award Plaintiff such other and further relief as the Court deems just, reasonable, or appropriate to correct the wrong done to Plaintiff.

AMBER PANKONIN, Plaintiff,

By: */s/ J.L. Spray*
J.L. Spray, Neb. Bar #18405
Mattson Ricketts Law Firm
2077 N Street, Suite 320
Lincoln, NE 68510
Phone: (402) 475-8433
Email: jls@mattsonricketts.com