## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMBER PANKONIN, | CASE NO. **4:24-CV-03229-JMG-MDN** |
| Plaintiff, | |
| v. | **BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND** |
| SOUTHEAST COMMUNITY COLLEGE AREA, | **NOTICE OF VOLUNTARY DISMISSAL OF CERTAIN CLAIMS PURSUANT TO FED. R. CIV. P. 41(a)(1)** |
| Defendants. | |

## I.     INTRODUCTION

Plaintiff Amber Pankonin ("Ms. Pankonin" or "Plaintiff"), by and through her undersigned counsel, respectfully submits this Brief in Opposition to the Motion to Dismiss ("the Motion," filing no. 6) Ms. Pankonin's Complaint (filing no. 1) filed by Defendant Southeast Community College Area ("SCC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     LEGAL STANDARDS

Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007). A complaint does "does not need detailed factual allegations." *Id.*

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all

"allegations in the complaint as true" and draw "all reasonable inferences" in favor of Plaintiff. *Absolute Essence LLC v. Pub. Consulting Grp. LLC*, 117 F.4th 1044, 1046 (8th Cir. 2024). In accepting all well-pleaded facts, the complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009). However, the "plausibility standard" is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). And, a complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.*

Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Braden*, 588 F.3d at 594. Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.    ARGUMENT

#### A.    Section 1981 Claims – Notice of Voluntary Dismissal

Upon review of Defendant's Brief in Support of the Motion to Dismiss (filing no. 7 at p. 9-10), Ms. Pankonin believes that references to 42 U.S.C. § 1981 were included in the Complaint in error and withdraws such references pursuant to this voluntary notice of dismissal without prejudice. Fed. R. Civ. P. 41(a)(1). As no claims were promised solely on 42 U.S.C. § 1981, this withdrawal does not substantively affect the Complaint or this Motion. Although required only with respect to discovery motions (NECivR 7.1(j)), counsel for Ms. Pankonin would certainly welcome consultation with counsel for SCC on any other matters that might assist with judicial economy and efficient resolution of this case.

**B.      The Complaint contains sufficient facts to allege claims under the Pregnant Workers Fairness Act.**

SCC argues that the Complaint contains insufficient allegations to support any claim under the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §§ 2000gg *et seq.* (Filing No. 7 at p. 10-11.) However, contrary to SCC's too-narrow view, Ms. Pankonin's claim is not limited solely to a few allegations that specifically reference her pregnancy. A complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

"To establish a prima facie case for failure to accommodate under the PWFA, [a plaintiff] must allege facts sufficient to show: (1) she is a qualified individual; (2) the employer was aware of her limitation; and (3) the employer failed to reasonably accommodate the limitation." *Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *2 (E.D. Wis. Dec. 16, 2024). Ms Pankonin has alleged that she was pregnant and had related medical conditions, such as hypertension requiring hospitalization. (Filing No. 1 at ¶¶ 36-37.) Ms. Pankonin alleged that SCC was aware of her status as a qualified, protected individual, and she requested reasonable accommodations, such as reasonable maternity leave and a teaching schedule that did not include night classes. (*Id.* at ¶ 38.) Despite multiple requests, SCC stalled and delayed for at least two (2) months before ignoring her requests by scheduling her to teach two (2) out of a total of three (3) night classes offered. (*Id.* at ¶ 39.) Ms. Pankonin also alleged that employees who were not experiencing pregnancy, childbirth, and/or related medical conditions were treated differently, and that other acts of discrimination and retaliation have occurred, including continuing issues through the date of filing. (Filing No. 1 at ¶¶ 46-47.)

Simply put, if the Court accepts all facts alleged as true and draws all reasonable inferences in favor of Ms. Pankonin – as is required – then Ms. Pankonin has alleged sufficient

3

facts to allow her claims under the PWFA to go forward at this stage. SCC's Motion must be denied.

**C.    The Complaint contains sufficient facts to allege § 1983 claims and equal protection claims.**

**1.    In General.**

Whether it is a question of law as to policy making authority or factual allegations about the non-existence of training, the complaint is more than sufficient to provide SCC with notice of the issues involved.

**a.    The Motion to Dismiss fails because the Court needs evidence to determine the relevant policymakers.**

The first fatal flaw in SCC's argument is that this Court must (or should) *now* – at the pleadings stage – resolve the question of "whose decisions represent the official policy" of SCC. (Filing No. 7 at CM/ECF p. 12.) This is a question of law for the trial judge to decide; but the time for that resolution is before submission to the jury. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737-38, 109 S. Ct. 2702, 2724 (1989) (cited by SCC, filing no. 7 at CM/ECF P. 12) (reviewing a jury instruction and remanding for determination of "where final policymaking authority as to employee transfers lay"). However, a motion to dismiss at the pleadings stage is not the appropriate time. Rather, the Court needs to review evidence to identify "final policymakers for the local government *in a particular area, or on a particular issue*." *Dean v. Cnty. of Gage, Neb.*, 807 F.3d 931, 942 (8th Cir. 2015) (emphasis supplied) (cited by SCC, filing no. 7 at CM/ECF p. 12). *See also, e.g., Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2724 (1989) (cited by SCC, filing no. 7 at CM/ECF p. 12) ("[T]he trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular

constitutional or statutory violation at issue."); *Walden v. City of Providence, R.I.*, 596 F.3d 38, 56 (1st Cir. 2010) (cited by SCC, filing no. 7 at CM/ECF p. 12) ("Courts must look to state law, including 'valid local ordinances and regulations,' for descriptions of the duties and obligations of putative policymakers in the relevant area at issue. This does not mean that we look simply to state law labels to determine whether an official is a final policymaker, '[b]ut our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.'").

In its Brief, SCC cites Neb. Rev. Stat. § 85-1506 for the proposition that the Community College Board of Governors has "general supervision, control, and operation" of SCC. (Filing No. 7 at CM/ECF p. 12.) SCC then argues that the Complaint is deficient because it does not cite a specific policy of the Community College Board of Governors. However, the fact that the Community College Board of Governors has "general" authority does not mean that it has the "requisite level of specific policymaking authority" or "the actual function of a governmental official, in a particular area." *Walden v. City of Providence, R.I.*, 596 F.3d 38, 56 (1st Cir. 2010). *See, e.g., Thurmond v. Ryals*, No. 4:17CV00222-BSM-JTK, 2021 WL 885993, at *7 (E.D. Ark. Mar. 9, 2021) (concluding that both a county sheriff and a jail administrator were policymakers for the jail). In other words, the determination of who is the "final policymaker" in this matter with respect to the particular issues (such as handling of sexual harassment claims and accommodations for pregnancy and related medical conditions) must be developed with discovery and properly presented to the Court with supporting evidence that may not be encapsulated in "general" state statute. *Cf. Anderson v. Neb.*, No. 4:17-CV-3073, 2018 WL 4691249, at *11 (Sept. 27, 2018) (cited by SCC, filing no. 7 at CM/ECF p. 13) (explaining that while some pleading allegations may not be "a model of specific pleading," they are sufficient to

plead past a "somewhat pedantic contention that we don't *know*," for example, whether an agency has accepted federal funding or, in this case, where policymaking authority lies).

### b. The Complaint contains sufficient allegations regarding SCC's failure to train.

SCC then argues that the Complaint fails to state a claim based upon an "'unofficial custom' of failing 'to train or supervise.'" (Filing No. 7 at CME/CF p. 13.) However, the Complaint sufficiently alleges the elements even as described by SCC. First, according to SCC, Ms. Pankonin must allege that "training practices were inadequate." (Filing No. 7 at CM/ECF p. 13.) Ms. Pankonin alleged that training was nonexistent; SCC "failed to train its employees and personnel." (Filing No. 1 at ¶ 42.)

Second, according to SCC, Ms. Pankonin must allege that it was "deliberately indifferent to the rights of others in adopting such training practices, and the alleged failure to train was a result of deliberate and conscious choices made by the entity." (Filing No. 7 at CM/ECF p. 13.) Again, Ms. Pankonin alleged that there was *no* training, which is the essence of deliberate indifference as to whether a policy is followed, and could only stem from a deliberate and conscious choice. (Filing No. 1 at ¶ 42.) *See, e.g., Leite v. City of Providence*, 463 F. Supp. 585, 591 (D.R.I. 1978) (explaining that training that is *"*nonexistent or reckless, or grossly, palpably, and culpably negligent" can give rise to § 1983 liability); *Warren v. City of Lincoln, Neb.*, 816 F.2d 1254, 1263 (8th Cir. 1987) ("If a municipality fails to train its police force, or if it does so in a grossly negligent manner so that it inevitably results in police misconduct, the municipality may fairly be said to have authorized the violations.") (citing *Leite*), *on reh'g on other grounds*, 864 F.2d 1436 (8th Cir. 1989); *Willis v. Blevins,* 966 F. Supp. 2d 646, 664-65 (E.D. Va. 2013) (explaining that although in limited circumstances, "a local government's decision not to train

6

certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983") (citing *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)).

Third, according to SCC, Ms. Pankonin must allege that "the alleged deficiencies caused a constitutional deprivation." (Filing No. 7 at CM/ECF p. 13.) Ms. Pankonin has alleged, throughout her Complaint, that her complaints were repeatedly ignored, and she was retaliated against. (*E.g.,* Filing No. 1 at ¶¶ 23-39, 45.) Moreover, the constitutional rights that SCC failed to train is clearly established by Title IX and the Fourteenth Amendment. *E.g., Oona R.-S.- by Kate S. v. McCaffrey*, 143 F.3d 473, 477 (9th Cir. 1998) (holding that under Title IX, "the duty to take reasonable steps to remedy a known hostile environment created by a peer is clearly established"); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999).

### c. The Complaint contains sufficient allegations regarding unconstitutional policy or custom.

Finally, SCC argues that Ms. Pankonin has not alleged "an unconstitutional policy or custom." (Filing No. 7 at CM/ECF p. 13-14.) Specifically, SCC circles back on its arguments about training, complaining that Ms. Pankonin's "allegations of failure to train and supervise are made in the most general terms possible." (*Id.* at p. 14.) However, as discussed above, Ms. Pankonin alleged that there was *no* training. (Filing No. 1 at ¶ 42.) Rather than "general," this allegation is just simple. Because no training occurred, no further description is needed. SCC also complains that "there is no allegation that any alleged failure to train or supervise impacted anyone other than Plaintiff."  (Filing No. 7 at CM/ECF p. 14.) However, Ms. Pankonin did allege that other employees were treated more favorably, other acts of discrimination and retaliation occurred, and patterned or pervasive conduct existed and created a hostile work environment. (Filing No. 1 at ¶ 46-48.) A complaint does "does not need detailed factual allegations."

*Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959. Accepting the allegations in the Complaint as true and drawing all reasonable inferences in favor of Ms. Pankonin – as the Court must – and keeping in mind that the Complaint cannot be "parsed piece by piece" and the "plausibility standard" is not a "probability requirement," the Complaint is sufficient and the Motion must be denied. *Absolute Essence*, 117 F.4th at 1046; *Braden*, 588 F.3d at 594.

     **2.  The Complaint contains sufficient allegations regarding retaliation.**

     SCC next argues that Ms. Pankonin's equal protection retaliation claims should be dismissed because only the First Amendment has been recognized as a basis for retaliation claims in the Eighth Circuit. (Filing No. 7 at CM/ECF p. 15.) However, the Complaint alleges numerous instances when Ms. Pankonin exercised her free speech rights under the First Amendment, for example, by filming "live local TV spots to promote both SCC and Ms. Pankonin's other business ventures," pointing out that other (particularly male) colleagues used SCC facilities for business ventures but were not reprimanded or required to pay, repeatedly reporting sexual harassment and incidents to different SCC officials (while being ignored), repeatedly requesting scheduling accommodations to different SCC officials, etc. (*E.g.,* Filing No. 1 at ¶¶ 18, 23, 28-35, 39.) In response, Ms. Pankonin was retaliated against. (*E.g.,* Filing No. 1 at ¶¶ 18, 24-25, 29-33, 35-36, 39, 45.) Accepting the allegations in the Complaint as true and drawing all reasonable inferences in favor of Ms. Pankonin – as the Court must – and keeping in mind that the Complaint cannot be "parsed piece by piece" and the "plausibility standard" is not a "probability requirement," the Complaint is sufficient and the Motion must be denied. *Absolute Essence*, 117 F.4th at 1046; *Braden*, 588 F.3d at 594.

    **D.  The Court may consider the NEOC record.**

     Plaintiff agrees that the Court may consider the NEOC record, as a public record, without

converting the Motion to one for summary judgment. However, SCC has not made any valid arguments based upon the NEOC record.

**E. SCC's arguments regarding the 300-day period are improper for this Motion.**

SCC essentially argues that each and every allegation that references a date before the 300-day period set forth in Neb. Rev. Stat. § 48-1118(2) must be stricken from the Complaint. (Filing No. 7 at CM/ECF p. 15-19.). Indeed, SCC "addresses" specific paragraphs and argues that each one, standing alone, "fail[s] to state a claim." (*Id.*) This clearly constitutes parsing the Complaint "piece by piece," which the Eighth Circuit has explained is incorrect. *Braden*, 588 F.3d at 594. Instead, the Complaint "should be read as a whole." *Id.* In reviewing the Motion, the Court's "context-specific task," *id.*, is not to dismiss or excise individual allegations that could provide context, but to decide whether the Complaint or particular claims should be dismissed. *See cf. Grigg v. Union Pac. R.R. Co.*, No. 4:21CV3124, 2023 WL 1864424, at *5 (D. Neb. Feb. 9, 2023) ("Even if not actionable, a defendant's acts that fall outside the limitations period may be used "as background evidence in support of a timely claim.") (citing U.S. Supreme Court, 8th Circuit, 9th Circuit, and district court cases) (cited by SCC, filing no. 7 at CM/ECF p. 18).

Simply put, Section E of SCC's Brief should be disregarded. Any issues related to the 300-day period set forth in Neb. Rev. Stat. § 48-1118(2) should be addressed at a later stage, such as a properly presented discovery motion, motion in limine, or summary judgment motion (all of which Plaintiff may also oppose). *E.g., Grigg v. Union Pacific R.R. Co.*, Nos. 4:21CV3124, 8:22CV210, 2013 WL 1684424, at *2-3 (D. Neb. Feb. 9, 2023) (reviewing a motion to compel) (cited by SCC, filing no. 7 at CM/ECF p. 18).

**5. SCC's arguments regarding the "continuing violation" doctrine are also improper for this Motion.**

SCC goes on to argue, again, that certain "allegations" should be dismissed if they reference events prior to the 300-day period set forth in Neb. Rev. Stat. § 48-1118(2) because they do not constitute a "continuing violation." (Filing No. 7 at CM/ECF p. 18-19.) As discussed above, the purpose of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is dismissal of the Complaint, not dismissal of individual, parsed allegations. The type of parsing SCC attempts to engage in now is not properly before the Court at this stage. *See infra* § 4.

Moreover, it is important to note that the "continuing violation" doctrine recognized by the Eighth Circuit may in fact apply to this case. SCC attempts to narrowly construe Ms. Pankonin's allegations falling within the 300-day period as only related to her pregnancy, and others as only related to other issues. (Filing No. 7 at CM/ECF p. 18-19.) However, she continued to be a woman even while pregnant, and the discrimination and retaliation issues are not so easily or clearly separated, at least at the pleadings stage. Indeed, SCC officials themselves tied together the issues in 2023 (well within the 300-day period) with what happened before, such as a purported "complaint" about Ms. Pankonin dating to mid-2022. (Filing No. 1 at ¶ 31.) When the evidence can be properly discovered and presented, the events and issues that SCC complains about in 2022 may well directly relate to what happened later. *E.g., Grigg*, 2013 WL 1684424, at *5 (""The applicability of the 300-day limitation period to this case is a fact-specific inquiry, dependent on the situation of each aggrieved person.") (finding that information predating an asserted statute of limitations period was discoverable, and determinations about relief would "be made at a later stage of the proceeding") (cited by SCC, filing no. 7 at CM/ECF p. 18).

10

### F.  Ms. Pankonin has alleged sufficient harm.

SCC next argues that Ms. Pankonin has not experienced any adverse employment action. (Filing No. 7 at CM/ECF p. 19-22.) According to SCC, Ms. Pankonin has not alleged any "harm respecting an identifiable term or condition of employment" because she "remains employed by the College in the same position" and she was not transferred and her duties were not changed. (*Id.* at p. 19-20.) Most importantly, "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution." *Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001); *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (recognizing and applying this rule after *Muldrow*, discussed below). For this reason alone, the Motion should be denied and the case should proceed for proper presentation to the Court at a later stage.

And, as SCC recognizes, the U.S. Supreme Court recently held that plaintiffs need not show "significant" harm. (Filing No. 7 at CM/ECF p. 20.) *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 347, 144 S. Ct. 967, 969, 218 L. Ed. 2d 322 (2024). There is no "elevated threshold of harm." *Id.* All Ms. Pankonin is required to allege (and later show) is that she was subjected to "disadvantageous" or "worse" treatment. *Id.* What SCC glosses over is that "harm" to "terms or conditions" does not require termination, demotion, decreased pay, or the like. *Id.* at 354, 144 S. Ct. at 974; *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) ("However, retaliatory conduct may consist of 'action less severe than outright discharge.'").

SCC's arguments ignore the allegations that Ms. Pankonin was forced to discontinue using SCC facilities for live TV spots because she was repeatedly reprimanded for it, but never given any amount or rate to pay to resolve the question (and male colleagues never faced such reprimands or demands for payment, even now); was forced to repeatedly report sexual harassment because SCC repeatedly failed to respond in any manner, conduct any investigation,

or take any remedial action; was required to work closely with her harassers, including by traveling out of the country with one of them and sharing student chaperone duties in a high-pressure situation; and was then forced to repeatedly request schedule changes both proactively (before what SCC calls "a tentative schedule") and after she was assigned to an unreasonable number of the department's night classes *after* her requests (like her reports and complaints) were ignored and she was told it "shouldn't be a problem." (Filing No. 1, at ¶¶ 18, 18(e) (noting that the reprimand was repeated, not just occurring once in November 2022), 18(g), 23, 25, 30, 38-39.)

As the Eighth Circuit has repeatedly explained, "[l]esser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer 'serious employment consequences' that adversely affect or undermine h[er] position." *Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015) (ultimately holding that a single reprimand is not sufficient where the employee thereafter quit). Ms. Pankonin's allegations fall into this category for a number of reasons. For example, while one reprimand may not be enough (depending on the circumstances), under Eighth Circuit precedent (even pre-*Muldrow*) multiple reprimands can be. *See, e.g., Kim*, 123 F.3d at 1060 (explaining that "papering" a personnel file with negative reports can be a factor); *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003) (explaining that "actions that disadvantage or interfere with an employee's ability to do his or her job, as well as 'papering' an employee's file with negative reports or reprimands, are sufficiently adverse to meet the Title VII standard for retaliation claims"). It has also been recognized, post-*Muldrow*, that "generally, under *Muldrow*, a schedule change that could reasonably be anticipated to adversely affect childcare arrangements—such as one that required working the nightshift or more weekends or varied

12

continuously—would likely qualify as an adverse employment action, even if childcare was not an issue." *Stafford v. WB Frozen, US, LLC*, No. 3:23-CV-00402, 2025 WL 496466, at *13 (M.D. Tenn. Feb. 13, 2025). And, where an employer has notice of a sexual harassment or assault complaint, it must engage in a reasonable investigation and a "good faith effort to implement an effective remedial measure" – not ignore the complaint as well as subsequent complaints. *Caruso v. Delta Air Lines, Inc.*, 113 F.4th 56, 73 (1st Cir. 2024). *See also, e.g., Doe v. Univ. of Kentucky*, 119 F.4th 705, 721-22 (6th Cir. 2024) ("Quite simply, a university cannot stand idly by when it knows about an act of Title IX retaliation."); *Stewart v. Rise, Inc.*, 791 F.3d 849, 862 (8th Cir. 2015) ("[T]here is no general requirement in the law that complaints be in a particular prescribed form. Rather, to show co-worker harassment, an employee must show that [her employer] knew or should have known about the harassment and failed to take prompt remedial action reasonably calculated to stop the harassment. (internal quotations omitted)); *Hathaway v. Runyon*, 132 F.3d 1214, 1223-24 (discussing, in particular, what constitutes a "remedial action").

**G. Ms. Pankonin's hostile work environment allegations are sufficient.**

Although SCC does not actually cite the elements, it focuses its argument on only one of five elements of hostile work environment harassment claims under Title VII, that "unwelcome harassment occurred." (Filing No. 7 at CM/ECF p. 22-26.) *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805-06 (8th Cir. 2013) (setting forth five elements) (cited by SCC, filing no. 7 at CM/ECF p. 22). While the Eighth Circuit standard "does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Jackman*, 728 F.3d at 806, the Court also must not parse or cherry-pick allegations. Rather, the Court must look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." *Stewart*, 791 F.3d at 860 (internal quotations omitted). "To support a hostile-work-environment claim, every instance of unwelcome conduct need not, individually, point to a prohibited animus." *Id.* at 861.

While Plaintiff's allegations could be more detailed in some respects, she has alleged that she was reprimanded for not engaging in behavior similar to other female employees, she was sexually harassed by two co-workers over a period of months, she repeatedly reported the harassment and was ignored, meanwhile she was required to continue working closely with the same co-workers on multiple projects, then she was (pretextually) reprimanded for getting "excited" during a long-past meeting and reprimanded or disciplined in advance of a school-sponsored trip – without any investigation of her complaints or, as far as Ms. Pankonin knows, any reprimand or action taken toward the harasser. (Filing No. 1 at ¶¶ 9, 19-25, 28-35.) Taken collectively, and in a light most favorable to Ms. Pankonin, with all reasonable inferences therefrom, a jury could conclude that the comments at issue were neither off-hand nor isolated. *See, e.g., Stewart*, 791 F.3d at 861-62. Likewise, SCC's forcing Ms. Pankonin to continue "to work in close proximity" with her harassers "added to the hostility of her environment." *Hathaway*, 132 F.3d at 1223.

### H. Ms. Pankonin's retaliation allegations are sufficient.

Finally, SCC argues that the Complaint fails to state a claim for retaliation in three ways. (Filing No. 7 at CM/ECF p. 26-

#### 1. Title VII and NFEPA

As to Title VII and the NFEPA, SCC premises its argument on two concepts: (1) that Plaintiff "failed to plead an adverse employment action," and (2) that she "failed to plead the third element," i.e., "a causal connection between the protected activity and the adverse action."

14

(Filing No. 7 at CM/ECF p. 26-27.)

As to the first, as discussed above, "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution." *Patrick*, 255 F.3d at 916; *Cole v. Grp. Health Plan, Inc.*, 105 F.4th at 1114 (recognizing and applying this rule after *Muldrow*). Moreover, as discussed above, Plaintiff has sufficiently alleged adverse employment action to survive the Motion.

As to the second, SCC points to the element of "a causal connection between the protected activity and the adverse action." (Filing No. 7 at CM/ECF p. 27.) As discussed above, Ms. Pankonin has alleged, among other things, that she repeatedly reported sexual harassment (or as SCC puts it, "lewd statements and actions"), yet SCC repeatedly failed to respond in any manner, conduct any investigation, or take any remedial action. (Filing No. 1, at ¶¶ 18, 18(e) (noting that the reprimand was repeated, not just occurring once in November 2022), 18(g), 23, 25, 30, 38-39.) *See, e.g., Caruso*, 113 F.4th at 73; *Doe*, 119 F.4th at 721-22; *Stewart*, 791 F.3d at 862; *Hathaway*, 132 F.3d at 1223-24. Thereafter, she was required to work closely with her harassers, including by traveling out of the country with one of them and sharing student chaperone duties in a high-pressure situation; and was then forced to repeatedly request schedule changes both proactively (before what SCC calls "a tentative schedule") and after she was assigned to an unreasonable number of the department's night classes *after* her requests (like her reports and complaints) were ignored and she was told it "shouldn't be a problem." (*Id.*) All of these could be considered retaliation stemming from her ignored complaints and reports. For that matter, most (if not all) of Ms. Pankonin's allegations could be considered retaliation for her pointing out that she was being treated different from her male colleagues vis-à-vis use of the SCC facilities (which treatment is ongoing). (Filing No. 7 at ¶ 18.) Simply put, Plaintiff's

allegations are sufficient to survive the Motion.

To the extent SCC criticizes Ms. Pankonin for not explaining "*why* the College would retaliate against Plaintiff for allegedly reporting lewd statements and actions of coworkers," (filing no. 7 at CM/ECF p. 27 (emphasis supplied)), she is as perplexed as SCC appears to be. Plaintiff does not bear the burden of explaining the opposing party's behavior. And at a minimum, Plaintiff's employer's intent has not been divulged to her to date, and would require discovery to understand and present to the Court.

### 2. Retaliatory Hostile Work Environment

In separately arguing Ms. Pankonin has not alleged a "*retaliatory* hostile work environment," SCC cites one case, *Heaton v. DeJoy*, No. 8:23-CV-112, 2024 WL 1348780, at *3 (D. Neb. Mar. 29, 2024). (Filing No. 7 at CM/ECF p. 27-28.) However, that case does not set forth a separate standard for hostile work environments vs. *retaliatory* hostile work environments. Thus, the same reasoning discussed above applies to Section III(H)(2) of SCC's Brief and the Motion should be denied for the same reasons. In addition, *Heaton* is not similar to this case before the Court. There, the *pro se* plaintiff alleged only that his work location was reassigned "in contravention of his union contract, and a hostile work environment," and failed to allege any protected action (such as Title VII rights). 2024 WL 1348780, at *2-3.

It should also be noted that, in this section, SCC says: "As noted above, courts 'look to the totality of the circumstances . . . .'" (Filing No. 7 at CM/ECF p. 27.) However, SCC does not acknowledge the "totality of the circumstances elsewhere in its Brief, as Plaintiff does above. Finally, SCC devotes a sentence to the "adverse employment action" argument. (*Id.* at CM/ECF p. 28.) As discussed above, "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution." *Patrick*, 255 F.3d at 916; *Cole v. Grp. Health Plan, Inc.*, 105 F.4th at

16

1114 (recognizing and applying this rule after *Muldrow*).

### 3. First Amendment/Public Concern

SCC's last argument involves whether Ms. Pankonin has sufficiently alleged a retaliation claim based on her free speech rights under the First Amendment. (Filing No. 7 at CM/ECF p. 28-30.) SCC argues that Ms. Pankonin's speech concerned only matters of "private concern" and therefore cannot be the basis of a retaliation claim. (*Id.*)

It is true that public employees have First Amendment rights to "speech on a matter of public concern." *McCullough v. Univ. of Arkansas for Med. Scis.*, 559 F.3d 855, 866 (8th Cir. 2009) (cited by SCC, filing no. 7 at CM/ECF p. 29). But the analysis of whether speech relates to a public concern or a wholly private concern is nuanced. As this Court has explained:

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of the speech, and the speech must relate to some matter of political, social, or other concern to the community. It is clearly established that allegations of sexual harassment can be of concern to the public. Allegations of sexual harassment may also relate to an employee's private interests, and when speech relates to both the employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern.

*Meints v. City of Wymore, Neb.*, No. 4:21-CV-3090, 2022 WL 3088556, at *7 (D. Neb. Aug. 3, 2022) (internal citations omitted). Factors that lean toward a finding that an employee's complaints about sexual harassment were primarily motivated by a public concern include repeated complaints after no remedial action was taken, escalating complaints to higher-level superiors or outside the chain of command, reporting sexual harassment or other issues that affect others, not making statements pursuant to official duties, not reporting complaints in response to a complaint about the reporter or to deflect from their own misconduct, etc. *Id.* at *8. Moreover, "it is not dispositive that the speech was made inside the office, rather than publicly, or that the speech concerned the subject matter of the employee's employment." *Kidd v. Jackson*,

No. CIV. 10-4112 SRN/SER, 2012 WL 3429891, at *5 (D. Minn. Aug. 14, 2012) (citing

*Garcetti v. Ceballos,* 547 U.S. 410, 420–21 (2006); *Connick v. Myers,* 461 U.S. 138, 143-44

(1983)).

      SCC cites two cases in its effort to portray Ms. Pankonin's allegations as solely a "private

concern," but both are distinguishable. (Filing No. 7 at CM/ECF p. 29.) In *McCullough*, the

employee's primary interest in filing complaints "in response to an investigation against him"

was "to remain employed." 559 F.3d at 866. Indeed, "the principal focus of his complaints was

the propriety of the behavior of the female complainants, as opposed to the propriety of the

college's discharge of its duties as a public institution." *Id.* In this case, Ms. Pankonin's speech

was not in response to any complaint about her (she eventually learned that there had been one,

but it was closed without informing Ms. Pankonin of its existence, filing no. 1 at ¶ 35). Rather,

her repeated complaints were increasingly aimed at not only spurring some remedial action of

some kind, but also highlighting the deficiencies in SCC's (lack of) proper response. Indeed,

SCC's appointed Title IX officer was not consulted until at least Ms. Pankonin's seventh

complaint. In *Taylor v. Ducey*, the plaintiff's reports of sexual harassment took place nearly two

years after the incident, and after she was discharged. *Taylor v. Ducey*, No. 8:19-CV-19, 2019

WL 13143743, at *4 (D. Neb. Oct. 9, 2019). In this case, Ms. Pankonin did not significantly

delay reporting, and did not report in response to or after being discharged or disciplined.

      In this case, many of the factors discussed above support denying the Motion, including

Ms. Pankonin's repeated complaints after no remedial action was taken, escalating complaints to

higher-level superiors or outside the chain of command, reporting sexual harassment or other

issues that affect others, not making statements pursuant to official duties, not reporting

complaints in response to a complaint about the reporter or to deflect from her own misconduct,

18

etc. *Meints*, 2022 WL 3088556, at \*8. Particularly given "this early stage of the proceedings," the Motion should be denied. *Id.*

## IV.    CONCLUSION

Based upon the authorities cited above and reasons articulated herein, Ms. Pankonin respectively request this Court deny SCC's Motion to dismiss in total.

AMBER PANKONIN, Plaintiff,

By:    */s/ J.L. Spray*
J.L. Spray, Neb. Bar #18405
Mattson Ricketts Law Firm
2077 N Street, Suite 320
Lincoln, NE 68510
Phone: (402) 475-8433
Email: jls@mattsonricketts.com

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(4), the undersigned certifies that this brief complies with the word limits set forth in NECivR 7.1(d). This brief contains 5,995 words, including all text, captions, headings, footnotes, and quotations, using the word counting function of Microsoft Word 365. The undersigned further certifies the accuracy and reliability of the legal briefing as required by NECivR 7.1(d)(3), including quotations, citations, paraphrased assertions, and legal analysis and has verified the contents of this filing.

*/s/ J.L. Spray*
J.L. Spray

19

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 10, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of

such filings to all attorneys of record or parties in the above captioned action registered with the

CM/ECF system.


Joshua J. Schauer
233 South 13th Street, Suite 1400
Lincoln, NE 68508
jschauer@perrylawfirm.com

_/s/ J.L. Spray_____
J.L. Spray