IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMBER PANKONIN,<br><br>              Plaintiff,<br><br>vs.<br><br>SOUTHEAST COMMUNITY COLLEGE AREA,<br><br>              Defendant. | 4:24-CV-3229<br><br>MEMORANDUM AND ORDER |

      This is an employment discrimination case. The plaintiff, Amber Pankonin, asserts the defendant, Southeast Community College Area, discriminated against her on the basis of her sex. Filing 1 at 1. The plaintiff brings this lawsuit based on the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.*, the Pregnant Workers Fairness Act (PWFA), 42 U.S.C. § 2000gg *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* She also alleges the defendant violated her state and federal constitutional rights and brings this suit under 42 U.S.C. § 1983. This matter is before the Court on the college's motion to dismiss (filing 6).

## I. STANDARD OF REVIEW

      To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts

pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider public records, including an administrative charge of discrimination, without converting the motion. *Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

## II. BACKGROUND

The plaintiff is a Nutrition Instructor in the college's culinary and hospitality program. Filing 1 at 2. She was initially hired in 2021. Her claims revolve around various actions and comments by her coworkers and supervisors, beginning in March 2022 and continuing through October 2023. She alleges she was sexually harassed throughout her employment, discriminated against because of her pregnancy in 2023, and retaliated against for "speaking out on matters of public concern" and opposing unlawful actions. *See* filing 1 at 9-11.

The plaintiff describes a number of instances where she was allegedly harassed:

<u>March 2022</u>

Program Chair Rob Epps reprimanded the plaintiff "for not spending lunch breaks with other female co-workers," even though the plaintiff's male coworkers did not spend lunch breaks with the group. Filing 1 at 2. The plaintiff pointed out the disparate treatment to Epps.

The plaintiff alleges that, to retaliate against her for speaking out, Epps sabotaged the plaintiff while she was being observed by the assistant dean, and Epps reported to the same dean that the plaintiff was "not inclusive." Filing 1 at 2. After the assistant dean abruptly left the college, Epps appointed a Program Co-Chair, Vicki Rethmeier, without announcing the vacancy or allowing the plaintiff to apply. The plaintiff alleges that she was more qualified for the position than Rethmeier. Filing 1 at 3.

Epps then resigned. Rethmeier appointed a new co-chair to replace Epps, again without announcing any vacancy or allowing the plaintiff to apply. She alleges she was also more qualified than this co-chair. Filing 1 at 3. The plaintiff asserts that she was not given the opportunity to apply because she had spoken up against Epps' disparate treatment of men and women at the workplace.

<u>November 2022</u>

The plaintiff was reprimanded for using the college's facilities to film live local TV spots for both the college and the plaintiff's "other business ventures." Filing 1 at 3. The plaintiff alleges that a male colleague also appeared in the TV spot, but he was not reprimanded. Rethmeier "stated or implied" that the plaintiff "needed to pay for the use of" the college's facilities, but the plaintiff's male colleagues also used the facilities for personal business ventures and were not asked to pay. Filing 1 at 3-4.

3

The reprimand "was repeated on more than one occasion," but Rethmeier never told the plaintiff how much she should pay to use the college's facilities. Filing 1 at 4. The plaintiff eventually stopped using the facilities, but others, including male colleagues, continued to use them. Filing 1 at 4.

<u>December 2022-February 2023</u>

The plaintiff began planning a school-sponsored trip to France with a coworker. The coworker "repeatedly brought up sexual topics," "talked about her marriage and extramarital relationships, including an extramarital relationship" with another faculty member, and "propositioned" the plaintiff. Filing 1 at 4.

The coworker and her alleged affair partner "escalated" the sexual harassment in February 2023, making comments about a "threesome" and referring to the plaintiff as "Hot Amber." Filing 1 at 4. The coworker tried to hold the plaintiff's hand; forcefully hugged her and touched her breast; referred to herself as "rapey;" gave the plaintiff jewelry for Valentine's day; and continued giving unsolicited information about the coworker's sexual relationships. Filing 1 at 4-5.

The plaintiff reported this conduct to various supervisors and the college's Title IX Officer throughout March, April, May, and June of 2023. Filing 1 at 5. In late April, the plaintiff met with the Vice President of Instruction to report the conduct. The Vice President told the plaintiff he would submit her reports of harassment to the Title IX Officer.

After her meeting with the Vice President, one of the college's deans requested a meeting with the plaintiff. The dean reprimanded the plaintiff for something that had happened in a meeting the previous summer. *See* filing 1 at 6. The plaintiff had just received a positive and favorable performance

4

appraisal, and her job performance was, at all times, satisfactory. Filing 1 at 6.

In June, the plaintiff learned that the Vice President never submitted her report to the Title IX Officer like he said he would. The Vice President reprimanded her for not submitting a "Tips Report," but the plaintiff alleges that other employees, including the Title IX Officer, assured her that such a report was not required. Filing 1 at 6.

The plaintiff alleges that the college failed to follow its procedures for handling sexual harassment claims, and failed to train its employees regarding those procedures. Filing 1 at 8. The plaintiff alleges that she reported sexual harassment to ten different supervisors, and none appropriately responded to the reports. *See* filing 1 at 5.

### Pregnancy

The plaintiff alleges she was harassed because of her pregnancy in July 2023. The only specific incident of such harassment alleged is that Rethmeier suggested that the plaintiff "could play the piano rather than teach less physically demanding courses during her pregnancy and after childbirth." Filing 1 at 7.

The plaintiff also alleged that she requested not to be scheduled to teach any night classes during the Spring 2024 semester, as an accommodation related to her pregnancy. Filing 1 at 8. However, in October, the Spring 2024 class schedule was posted, and the plaintiff was scheduled to teach two night classes. (Only three night classes are offered in her program.)

The college provided scheduling accommodations to other instructors based on medical conditions and pregnancy, but did not accommodate the plaintiff's requested schedule accommodation. The plaintiff alleges that she was subject to a hostile work environment because of her sex and her

5

pregnancy. She asserts that male colleagues, and employees without children and who were not pregnant, received favorable treatment compared to the plaintiff. Filing 1 at 9.

### III. DISCUSSION

The plaintiff makes the following claims:

1. Discrimination on the basis of gender or sex based on unspecified adverse employment actions;
2. Hostile work environment on the basis of gender or sex;
3. Discrimination on the basis of pregnancy, childbirth, or related medical conditions based on unspecified adverse employment actions;
4. Hostile work environment on the basis of pregnancy, childbirth, or related medical conditions;
5. Retaliation for speaking out on matters of public concern or engaging in unspecified protected activity; and
6. Retaliatory hostile work environment after engaging in unspecified protected activity.

Filing 1 at 9-12.

The college asserts the plaintiff has failed to state facts showing discrimination based on her pregnancy, failed to allege an adverse employment action, failed to allege facts that support the college's liability under § 1983, and failed to exhaust the administrative remedies as to some of her claims.[1]

---

[1] The plaintiff has voluntarily dismissed her claim for violations of § 1981 pursuant to Fed. R. Civ. P. 41(a)(1). Filing 10 at 2.

1. PWFA AND ADA

The plaintiff asserts that the college's conduct while she was pregnant amounts to discrimination under the PWFA and the ADA. *See* filing 1 at 10. The college argues that the complaint "contains very few pregnancy-related allegations," and most of them collapse into her other claims of discrimination. Filing 7 at 10. The Court agrees with the college in this instance.

The PWFA requires employers, including state or local government entities, to make "reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." §§ 2000gg-1(1), 2000gg-4. "Known limitation" means "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." § 2000gg(4). The Act also forbids employers from taking "adverse action in terms, conditions, or privileges of employment . . . on account of the employee requesting or using a reasonable accommodation" related to the "known limitations." § 2000gg-1(5).

The plaintiff alleges the college failed to accommodate her reasonable request not to teach night classes in Spring 2024. The college argues this request was not based on a "known limitation," but was instead related to childcare. Filing 11 at 6; filing 8-1 at 2 ("I asked . . . not to work night classes in the January 2024 quarter because I needed to be home by 5:15pm to care for my child").

The Court agrees that the only pled requested accommodation—to teach night classes—was not for a "physical or mental condition" related to the plaintiff's pregnancy. *See* 29 C.F.R. § 1636 app. A § 3 ("Time for bonding or time for childcare . . . is not covered by the PWFA"). While the plaintiff alleges that she was diagnosed with pregnancy-related hypertension, there is no

7

allegation in the complaint that she requested accommodations for that condition or that the college denied any such request. *See* filing 1 at 7-8.

The plaintiff alleges she was subject to a hostile work environment because she was pregnant. Such conduct is actionable under Title VII of the Civil Rights Act for sex discrimination, not the PWFA. *See* § 2000ee(k); *Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 198-99 (1991). Rather, the PWFA guarantees that pregnant employees may obtain reasonable accommodations, and cannot be retaliated against for requesting such accommodations. The plaintiff's PWFA claim will be dismissed because she did not allege that she requested accommodations for the "known limitations" related to her pregnancy.

The plaintiff also argues that she was discriminated against because of a disability, presumably because of her "pregnancy-related hypertension," or because of her pregnancy generally. *See* filing 1 at 7. To the extent the plaintiff asserts a claim for failure-to-accommodate under the ADA, that claim fails for the same reasons as the PWFA claim: the plaintiff did not request the night-class accommodation because of the medical needs of her pregnancy; rather, she requested the accommodation for childcare. *See Hustvet v. Allina Health Sys.*, 910 F.3d 399, 410 (8th Cir. 2018) (a requested accommodation must relate to an individual's disability). While being pregnant may qualify as a disability under the ADA, being a parent does not. *See* § 12102(1)(A). The complaint does not contain any other facts that support any kind of disability-related discrimination, so the plaintiff's ADA claims will also be dismissed.[2]

---

[2] To the extent the plaintiff asserts she was retaliated against for requesting and taking maternity leave in her administrative charge, *see* filing 8-1 at 2, this claim was not clearly presented to the Court, nor do the facts in the complaint support an inference that the

2. ADMINISTRATIVE EXHAUSTION

The college argues that the plaintiff is "barred from raising alleged violations that occurred before February 9, 2023." Filing 7 at 16. The plaintiff filed her administrative charge on December 6, 2023. Filing 8-1 at 1. The basis of the charge was discrimination on the basis of sex, pregnancy, and retaliation. She indicated the discrimination was a "continuing action," and the date the discrimination took place the earliest was February 15, 2023. Filing 8-1 at 1.

Before seeking a judicial remedy for alleged employment discrimination based on sex or gender, a claimant must file a charge with the EEOC and the NEOC. § 2000e-5(f)(1); Neb. Rev. Stat. § 48-1120.01. Each discrete adverse employment action must be individually addressed in the administrative charge. *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021). The NFEPA requires an employee to file an administrative charge within three hundred days of the alleged unlawful employment action. Neb. Rev. Stat. § 48-1118(2).

However, a hostile work environment claim is different in kind because it is not a discrete employment action; such a claim is a "continuing violation" composed of multiple events which may not be actionable on their own. *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 920 (8th Cir. 2018). A hostile work environment claim can contain all acts which make up the same unlawful employment practice if at least one act falls within the time period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). However, the continuing violation doctrine cannot toll the limitations or revive a claim

---

plaintiff was retaliated against for taking maternity leave. The plaintiff may amend her complaint to include facts related to this issue, if such facts exist.

9

involving a discrete act, such as a failure to promote, denial of transfer, or refusal to hire. *Wedow v. City of Kan. City,* 442 F.3d 661, 670 (8th Cir. 2006).

The plaintiff alleges that she was sexually harassed by her coworkers throughout February 2023. Filing 1 at 4-5. This falls within the limitations period. Thus, any acts which are part of the "same unlawful employment practice," or the same hostile work environment, may be raised. The college argues that some of the acts alleged—conduct by Epps, Rethmeier, and the plaintiffs' coworkers—do not make up "the same unlawful employment practice" for purposes of the continuing violation doctrine. Filing 7 at 18. At this early stage of the proceeding, the Court is not convinced. The plaintiff alleges that she was ignored, several times, when she reported the coworkers' conduct. At the very least, the earlier acts by Epps and Rethmeier provide background context supporting the plaintiff's timely claim involving the coworkers and how management allegedly ignored the plaintiff's complaints. *See Wedow,* 442 F.3d at 670.

The college also argues that the interaction with Epps was not included in the plaintiff's administrative charge, and was not administratively exhausted. Filing 7 at 17. But a claimant need not include *all* of the evidence of a hostile work environment claim in her administrative charge; a claim may be as broad as the EEOC investigation which would reasonably result. *See Weatherly,* 994 F.3d at 945.

The Court agrees that any "failure to promote" claim, to the extent one was asserted, *see* filing 1 at 3, was not administratively exhausted and is subject to dismissal as a standalone claim. *See* filing 8-1. And to the extent the plaintiff claims that not being allowed to use college facilities to film TV spots was a discrete adverse employment action, *see* filing 10 at 11, such a claim is time-barred. But those prior acts "may be used as background evidence in

support of" the plaintiff's timely claims. *Wedow*, 442 F.3d at 670 (citing *Morgan*, 536 U.S. at 113).

### 3. HOSTILE WORK ENVIRONMENT

The plaintiff's claims under the NFEPA and Title VII require the plaintiff to show she suffered an adverse employment action. The standards under these statutes are essentially the same. *E.g., Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627 (8th Cir. 2025). The plaintiff alleges that she was sexually harassed, and later retaliated against for reporting the harassment. She asserts the harassment she suffered constitutes a hostile work environment. The college argues that the facts in the complaint fail to state a claim for a hostile work environment.

To recover on a claim for a hostile work environment based on co-worker harassment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex, the harassment affected a term, condition, or privilege of employment; and (4) the employer knew or should have known of the harassment and failed to take proper remedial action. *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 662 (8th Cir. 2021).

Anti-discrimination laws do not prohibit all verbal or physical harassment and do not create a "general civility code." *See, e.g., Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 701 (8th Cir. 2021); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003). At the pleading stage, the Court must determine whether the alleged harassment is "severe or pervasive enough to create an objectively hostile or abusive work environment." *See Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). District courts must "filter out" complaints based on isolated incidents and "the ordinary tribulations of the

11

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.*

The Court must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance, and whether the conduct unreasonably interfered with the employe's work performance. *Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The harassment alleged from December to February 2023 was frequent, and the allegations include unwanted physical groping; more than an "offensive utterance." Even without "tangible effects" like diminished job performance or psychological harm, severe and pervasive discriminatory conduct "offends Title VII's broad rule of workplace equality." *Harris*, 510 U.S. at 22. The plaintiff alleged that her employer knew of the harassment and failed to take action. *See Lopez*, 989 F.3d at 662. After the plaintiff reported the misconduct, she was still required to work with the coworkers who harassed her, filing 1 at 5-6, a "significant factor" in the totality-of-circumstances inquiry, *Hathaway v. Runyon*, 132 F.3d 1214, 1223 (8th Cir. 1997).

The college's argument that the plaintiff's allegations are not sufficiently severe primarily rest on decades-old, out-of-circuit decisions made on summary judgment records. *See* filing 7 at 25. Based on the frequency of the conduct over the course of only a few months, and the severity of the conduct, including unwanted physical touching and explicit sexual propositioning, the Court is satisfied that the plaintiff has pled more than "sporadic, isolated incidents" and has sufficiently alleged a "poisoned" work environment that affected a term or condition of her employment. *See Blomker*, 831 F.3d at 1051; *cf.*

12

*Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 800 (8th Cir. 2021).

The plaintiff also references two isolated "reprimands," in March and November 2022, and alleges she was treated worse than her male colleagues for engaging in similar behavior. This conduct, at least at the pleading stage, supports an inference that the college's supervisors were hostile towards the plaintiff on the basis of her sex. These earlier acts also support the inference that the plaintiff's employer intentionally and knowingly ignored her complaints of harassment as part of a pattern of ignoring the plaintiff's complaints of disparate treatment.

The defendant argues that, while the plaintiff alleged she reported the misconduct, she did not allege that the misconduct continued after those reports. It's true the complaint is silent about any specific incidents of harassment after April 6, 2023. *See* filing 1 at 5. Rather, after April, the focus of the plaintiff's complaint is how her supervisors failed to respond to the harassment that, for the most part, occurred in February. But those allegations are part of the fourth element of her hostile work environment claim: that the plaintiff's employer knew of the harassment and failed to take remedial action. *Lopez*, 989 F.3d at 662. In this case, the plaintiff pled that her supervisors did more than passively fail to act—they actively obscured her complaints and made it more difficult for her to seek redress.

The plaintiff has sufficiently pled a claim under the NFEPA and Title VII that she was subject to a hostile work environment on the basis of sex.

### 4. ADVERSE EMPLOYMENT ACTIONS

The college argues that, apart from the hostile work environment claim, the plaintiff has failed to allege any other actionable adverse employment

13

action. An adverse employment action occurs when an employer causes an employee to suffer "some harm" respecting an identifiable term or condition of employment. See *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024).

The plaintiff included the following discrete incidents in her administrative complaint: she was not allowed to use college facilities for personal uses; she was sexually harassed by her coworkers; she was disciplined by a supervisor in May 2023 for something that happened in September 2022; she was told conflicting information about submitting a complaint about the aforementioned sexual harassment; a supervisor told her that she could "play piano" rather than teach a course while pregnant; and the college ignored her request to not be scheduled to teach night classes. See filing 8-1 at 1-2.

It's not clear, either from the complaint or the administrative charge, which of these incidents are alleged to be discrete adverse employment actions upon which the plaintiff's discrimination claims rest. In her brief, the plaintiff argues that the numerous reprimands she received amounted to "papering" her file with negative reports. Filing 10 at 12. But the Court agrees with the college that the plaintiff has not alleged that her personnel file was modified in any way that might *lead* to some adverse action—such as not receiving tenure, a raise or promotion, or disciplinary action. See *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003). There's no indication that these reprimands "harmed" the plaintiff professionally or affected a term or condition of her employment.

However, the Court is satisfied that the plaintiff's allegation that she was scheduled for night classes in spite of her request constitutes a discrete adverse employment action. The plaintiff has alleged other employees were accommodated when they requested scheduling accommodation. Filing 1 at 7. A work schedule is a condition of employment, and the disparate treatment

14

alleged supports an inference that the plaintiff suffered some harm in being scheduled for night classes despite her request. *See Muldrow*, 601 U.S. at 355-56. While the college insists the plaintiff failed to state a claim because she didn't allege she "*actually had to work* the night classes," filing 11 at 12 (emphasis in original), it's reasonable to infer that an employee is required to work at the times she is scheduled. The plaintiff's failure to allege that she "actually worked" during those times is not fatal to her claim.

According to her brief, the plaintiff's allegations about the runaround she received in reporting harassment are part of her hostile work environment claim—as discussed *supra*. Filing 10 at 13. The plaintiff does not address the other incidents addressed in the administrative charge, and it does not appear that any would, independently, qualify as a discrete adverse employment action. Rather, the alleged conduct makes up the plaintiff's claim that she was subjected to a hostile work environment on the basis of her sex. The only actionable conduct is the alleged failure to accommodate her schedule preferences, as well as the alleged hostile work environment.

### 5. RETALIATION

The plaintiff alleges she was retaliated against for reporting the alleged harassment and disparate treatment. She asserts she was subject to a retaliatory hostile work environment after repeated efforts to report harassment by her coworkers, and she suffered other adverse employment actions.

A claim for retaliation requires a plaintiff to show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred because she engaged in the protected activity. *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).

15

The parties appear to agree that the plaintiff sufficiently alleged she engaged in a protected activity for purposes of Title VII. *See* filing 7 at 26. The college argues that the plaintiff failed to failed to plead an adverse employment action, and failed to causally connect any such action to her protected activity. Filing 7 at 27.

The plaintiff alleged she was not given her requested schedule, even though other employees' similar requests were accommodated. For the reasons explained above, this constitutes an adverse employment action for purposes of her retaliation claims.

When a retaliation claim is premised on timing alone, the protected activity and the adverse employment action must be very close. For example, the Eighth Circuit has held that a six-week span between an EEOC charge and termination is sufficient to plausibly allege a causal connection. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017). The plaintiff alleges that she tried to report sexual harassment as late as June 2023, and she was denied her accommodations in either August or September of the same year. *See* filing 1 at 6-8.

The span between the plaintiff's alleged protected activity and the employment action is longer than six weeks. However, the plaintiff has pled other events that support an inference she was retaliated against for trying to report harassment. The plaintiff alleges that several supervisors ignored her reports and even "reprimanded" her for "incorrectly" submitting her complaint. Filing 1 at 6. Given the relatively short amount of time between the alleged protected activity and the failure to accommodate her schedule request, the plaintiff has sufficiently pled—drawing all inferences in her favor at this early stage of the proceedings—that the college retaliated against her for reporting sexual harassment.

The plaintiff's claim for a retaliatory hostile work environment is factually intertwined with the above. It's unclear which allegations make up her claim for retaliatory hostile work environment, as contrasted to her claim for a gender-based hostile work environment. The plaintiff's briefing does not distinguish between the two claims. *See* filing 10 at 16. The alleged fact that her supervisors failed to investigate her harassment claim can't be both retaliatory *and* part of the gender-based claim: the temporal connection doesn't exist.[3]

The plaintiff's complaint alleges that, after her protected action, Rethmeier "harassed" her by suggesting that she could play the piano rather than teach, and that she was scheduled to teach night classes despite her request. Filing 1 at 7-8. These facts are insufficient to meet the high bar for a retaliatory hostile work environment, particularly where the night class schedule is also purported to be a discrete adverse employment action. The plaintiff has failed to allege a retaliatory hostile work environment, so that claim will be dismissed.

### 6. SECTION 1983

The plaintiff alleges the college violated her First and Fourteenth Amendment rights under the federal Constitution, as well as her rights under § 5 of the Bill of Rights of the Constitution of Nebraska. Filing 1 at 11. The plaintiff has only named the college as a defendant, and therefore her claims

---

[3] Whether the college's alleged failure to accommodate the plaintiff's request to teach night classes was motivated by gender-based discrimination, or was retaliatory based on her complaints of sexual harassment, remains a question that cannot be resolved based on the allegations in the complaint. The plaintiff may pursue both theories related to that discrete employment action.

are against a political subdivision of the state of Nebraska. *See* Neb. Rev. Stat. § 85-1501. The college argues that the plaintiff has failed to state a claim under § 1983 because none of the allegations indicate that the alleged harm was caused by an official policy or custom of the college. Filing 7 at 11.

At the motion to dismiss stage, the pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To state a claim under § 1983 against a political subdivision, a plaintiff must allege an act performed under color of state law that resulted in a constitutional injury, and must identify either an official policy or a widespread custom or practice of the political subdivision that provided the moving force behind the unconstitutional act and the plaintiff's resulting injury. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).

However, a political subdivision cannot be liable for employing a tortfeasor. *E.g. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, § 1983 liability attaches to a governmental entity only if a plaintiff shows that a constitutional violation resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

The plaintiff alleged that she reported the sexual harassment to multiple supervisors, and *none* followed the college's alleged official procedure for handling such complaints. Filing 1 at 6. She also alleged that while two supervisors told her that a certain report was not required, the she was "reprimanded" by a Vice President for not making that report. Filing 1 at 6.

The plaintiff's allegations support an inference that the college had a "widespread" failure to comply with the college's official policy involving reporting harassment, which, in turn, supports an inference—at this early

18

stage of the case—that the college had a practice or custom of pervasive unconstitutional conduct. See *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018). This is the pleading stage, not the proving stage, and there is a reasonable expectation that discovery may reveal evidence to support the plaintiff's claims.

However, the plaintiff has not identified a "policy or custom" regarding the allegedly *retaliatory* conduct. The complaint does not contain similar widespread allegations about the wrongful treatment of employees who reported sexual harassment. While reporting sexual harassment is protected activity under the First Amendment, *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011), the plaintiff has not sued the employees who allegedly harassed or adversely scheduled her. The plaintiff has failed to state a claim against the college, a political subdivision, for the allegedly retaliatory conduct so as to state a claim under § 1983. These claims will therefore be dismissed.

## IV. CONCLUSION

All of the plaintiff's claims for violations of the PWFA and the ADA will be dismissed, as will her claims for a retaliatory hostile work environment under Title VII and retaliation under § 1983. The plaintiff has stated a claim for a hostile work environment under Title VII, retaliation under Title VII, and a widespread custom or policy of unconstitutional behavior under § 1983.

IT IS ORDERED:

1. The defendant's motion to dismiss (filing 6) is granted in part and denied in part.

2. This case is referred to the Magistrate Judge for case progression.

Dated this 9th day of July, 2025.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Senior United States District Judge